UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :
GREATER NEW YORK MUTUAL INSURANCE COMPANY, :
                                           :    22cv2052 (DLC)
                Plaintiff,                 :
                                           :    OPINION AND ORDER
                -v-                        :
                                           :
THE BURLINGTON INSURANCE COMPANY,          :
SCOTTSDALE INSURANCE COMPANY, and ABC      :
INSURANCE COMPANIES 1-10,                  :
                                           :
                Defendants.                :
                                           :
------------------------------------------ X

APPEARANCES:

For the plaintiff:
Milber Makris Plousadis & Seiden, LLP
Jason Pozner
75 Livingston Avenue, Suite 103
Roseland, NJ 07068

For defendant The Burlington Insurance Company:
Lazare Potter Giacovas & Moyle LLP
Yale Howard Glazer
747 3rd Avenue, 16th Floor
New York, NY 10017

For defendant Scottsdale Insurance Company:
Kennedys CMK LLP
Ann Odelson
Erica Sanders
570 Lexington Avenue, 8th Floor
New York, NY 10022

DENISE COTE, District Judge:

     In 2012, a worker was injured when he fell at a

construction site.  The parties in this insurance coverage

dispute -- the insurer for the owner of the property where the

accident occurred and the insurers for two contractors working
on the construction site -- have all moved for summary judgment.
The only dispute is over the duty to defend the owner of the
property in ongoing litigation in New York State brought by the
injured worker.  While the insurer for one contractor admits
that it has a duty to defend the owner, the insurer for the
other contractor -- Scottsdale Insurance Company ("Scottsdale")
-- has denied such a duty.  For the following reasons, summary
judgment is granted against Scottsdale.

## Background

I.   The Underlying Action

This dispute emerges from a construction accident in which
Luis Yaguachi, an employee of Lemi Restoration, Inc. ("Lemi")
fell from a height on January 25, 2012.  The construction site
was owned by Park City 3 and 4 Apartments ("Park City") and was
located at 97-37 63rd Drive, Queens, New York ("Project").  Park
City had entered into contracts with Phoenix Building Restorer,
Inc. ("Restorer") and Phoenix Bridging Inc. ("Bridging") to work
on the Project.  Lemi was a subcontractor for Bridging.

On June 29, 2012, Yaguachi sued Park City, Restorer, and
Bridging in New York Supreme Court, Kings County ("Underlying
Action").  The state court complaint alleges that Yaguachi was
"caused to fall by reason of the negligence of" Park City,

Restorer, and Bridging and brings a claim sounding in common law negligence and claims under New York Labor Law.

Park City brought cross-claims of contractual indemnification and breach of contract to procure insurance against Bridging.  The contract between Park City and Bridging, however, was not produced in discovery in the Underlying Action, and in its motion for summary judgment, Bridging argued that it "never entered into any agreements in which it agreed to indemnify" Park City.  On February 13, 2018, the state court granted Bridging's motion for summary judgment on Park City's cross-claims ("State Court Decision").  The state court found that because there was "no written agreement between . . . Park City and Bridging wherein Bridging agreed to indemnify" Park City, Park City's contractual indemnification claim had to be dismissed.  Park City's breach of contract to procure insurance was similarly dismissed because "there is no written agreement wherein Bridging agreed to procure insurance covering Park City."

The contract between Park City and Bridging (the "Contract") was eventually located.  The Contract between Park City and Bridging was executed on January 4, 2012.  It included an indemnity clause and required Bridging to add Park City as an additional insured on its insurance policy.  Chandra Jain and

Michael Siwiec executed the Contract on behalf of Park City and Bridging, respectively.

On April 13, 2022, Park City moved "to renew" Bridging's prior motion for summary judgment on the ground that Park City had obtained the "previously missing signed contract" between Park City and Bridging.  After oral argument, the state court denied Park City's motion for "failure the establish the provenance of the contract and failure to provide a reasonable excuse for the delay in production of the contract."

II.  The Insurance Policies

Greater New York Insurance Company ("GNY"), the plaintiff in this federal action, is the insurer for Park City.  The Burlington Insurance Company ("Burlington") is the insurer for Restorer.  Scottsdale is the insurer for Bridging.

Scottsdale issued Bridging a commercial general liability insurance policy with a policy period from June 15, 2011 to June 15, 2012 ("Scottsdale Policy").  The Scottsdale Policy includes as an additional insured "any person or organization for whom [Bridging is] performing operations when [Bridging] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Bridging's] policy."  Under the Scottsdale Policy, its coverage for additional insureds required by contract is primary and noncontributory.

On November 26, 2013, GNY tendered the defense of Park City
to Scottsdale.  On April 3, 2014, Scottsdale denied GNY's
request on the ground that Scottsdale had "not been provided
with a valid executed agreement that requires that [Park City]
be named as an additional insured."

III. Procedural History in Federal Lawsuit

GNY filed this action against Burlington and Scottsdale on
March 14, 2022, seeking a declaration that Burlington and
Scottsdale have and had a duty to defend Park City and that such
duties are primary to GNY's.[1]  GNY also brought claims against
Burlington and Scottsdale for breach of contract and equitable
contribution for the defense costs and expenses paid by GNY in
the Underlying Action.

Burlington brought a counterclaim against GNY asserting
that any obligation of Burlington to defend Park City is subject
to and limited by the obligations of GNY and other insurers
acting as primary insurers to Park City.  Burlington also

---

[1] GNY also alleged that Scottsdale issued Bridging an excess
insurance policy ("Scottsdale Excess Policy") and that Park City
is covered as an additional insured under the Scottsdale Excess
Policy as well.  In its motion for summary judgment, GNY states
that the Scottsdale Excess Policy was identified in Scottsdale's
initial disclosures in this action but was not produced in
discovery despite GNY's requests.  GNY's motion, therefore, only
addresses the Scottsdale Policy.  In response, Scottsdale argues
that any coverage under any excess policy issued by Scottsdale
would be excess over GNY's primary coverage of Park City.  The
Scottsdale Excess Policy and the parties' obligations under that
policy are not addressed in this Opinion.

brought a cross-claim against Scottsdale asserting that if Burlington is found to have a duty to defend Park City, Scottsdale also owes such a duty to Park City.  Scottsdale brought a cross-claim against Burlington asserting that if Scottsdale is found to have a duty to defend Park City, Burlington also owes such a duty to Park City.

Discovery ended on December 14.[2]  GNY moved for partial summary judgment on February 2, 2023, seeking a declaration that Burlington and Scottsdale have and had a duty to defend GNY's insured, Park City, and those duties are primary to GNY's duty to Park City.  On February 22, Burlington and Scottsdale cross-moved for summary judgment.  The motions were fully submitted on March 30.  The evidence submitted with the motions includes documents from the Underlying Action; the Contract; the insurance policies; and a transcript from Siwiec's deposition in this action.

## Discussion

Summary judgment may only be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To present a genuine issue of material fact

---

[2] On December 8, counsel for Siwiec moved to quash the non-party subpoena served on Siwiec by Burlington.  After a conference, the motion to quash was denied on December 12.  Siwiec's deposition took place on December 13.

sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

GNY seeks a declaration that Burlington and Scottsdale each have a duty to defend its insured, Park City, and that this obligation is primary and non-contributory to GNY's duty to defend to Park City.[3]  Burlington does not oppose GNY's motion for summary judgment.  Furthermore, Burlington and Scottsdale agree that if they both have a duty to defend Park City, such duties are equal and any reimbursement to GNY for the reasonable costs and expenses incurred defending Park City in the Underlying Action should be split equally between Burlington and Scottsdale.  The only dispute, therefore, is whether Scottsdale owes Park City a duty to defend, and if so, when that duty was triggered.

---

[3] GNY is not seeking summary judgment on its other claims.

The parties agree that New York law applies to this action. "New York law distinguishes between the duty to indemnify and the duty to defend." CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 76-77 (2d Cir. 2013). "[T]he duty to defend is triggered by the filing of a lawsuit." Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 93 (2d Cir. 2023) (citation omitted).

> In determining whether a duty to defend exists, courts are to compare the allegations of the complaint to the terms of the policy. If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.

Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 83 (2d Cir. 2006) (citation omitted). An insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." Fitzpatrick v. Am. Honda Motor Co., 78 N.Y.2d 61, 67 (1991). The obligation to defend applies with equal force to an additional insured. BP Air Conditioning Corp. v. One Beacon Ins. Grp., 821 N.Y.S.2d 1, 2 (1st Dep't 2006).

"[D]istrict courts must distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory-judgment action is ripe for adjudication." Admiral Ins. Co., 57 F.4th at 93 (citation omitted). When the declaratory judgment action addresses the

duty to defend, the action is ripe for adjudication when the court finds a "practical likelihood that a third party will commence litigation against the insured."  Id. (emphasis in original).

A court retains discretion, however, to refuse to exercise jurisdiction over a declaratory judgment action that it "would otherwise be empowered to hear."  Id. at 96 (citation omitted). Courts consider the following factors when exercising such discretion:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

Id. at 99-100 (citation omitted).

"The term res judicata . . . encompasses two significantly different doctrines: claim preclusion and issue preclusion." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 107 (2d Cir. 2015).  "Federal courts are required to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do

so." Exxon Mobil Corp. v. Healey, 28 F.4th 383, 398 (2d Cir. 2022).  New York law of claim preclusion applies here.

Claim preclusion "bars litigation on a claim if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." Hansen v. Miller, 52 F.4th 96, 100-01 (2d Cir. 2022) (New York law) (citation omitted).  "New York takes a pragmatic and flexible attitude toward claim preclusion, recognizing that the doctrine, if applied too rigidly, could work considerable injustice." Id. at 101.

Scottsdale has and had a duty to defend Park City since the date of GNY's tender to Scottsdale -- November 13, 2013.  The facts are undisputed.  The Contract required Bridging to include Park City as an additional insured under Bridging's insurance policy.[4]  The Scottsdale Policy, in turn, includes as an additional insured any organization with which Bridging

---

[4] In its response to GNY's Rule 56.1 Statement of Undisputed Facts ("56.1 Statement"), Scottsdale neither admits nor denies that the Contract contained such a requirement.  Under the Rule 56.1 of the Southern and Eastern Districts of New York's Local Rules, a statement in a party's 56.1 Statement is deemed admitted for the purposes of the summary judgment motion unless "specifically controverted" with admissible evidence by the opposing party.  Given that Scottsdale did not specifically controvert the existence of the Contract, its existence is deemed admitted.

contracted to include as an additional insured under Bridging's insurance policy.  The complaint in the Underlying Action includes allegations that come within the ambit of the Scottsdale Policy.  Therefore, Scottsdale had and has a duty to defend Park City in the Underlying Action.

Scottsdale argues that this Court cannot rule on Scottsdale's duty to defend Park City because the state court dismissed Park City's contractual indemnification and breach of contract to procure insurance claims against Bridging on the ground that "there [was] no written agreement" between Park City and Bridging.[5]  Because of this conclusion, Scottsdale asserts, this Court cannot find that a written contract that required Bridging to add Park City as an additional insured on its policy exists, and without such a contract, Park City is not an additional insured under the Scottsdale Policy.  The legal basis for Scottsdale's argument is not entirely clear, but Scottsdale appears to argue that the doctrine of claim preclusion and this Court's discretion should prevent any acknowledgment of the existence of the Contract or enforcement of the unambiguous terms of its insurance policy.

---

[5] No party has explained why the Contract not timely produced in the Underlying Action even though its existence was acknowledged by Siwiec in a deposition in the Underlying Action.

11

Scottsdale's argument fails for several reasons.  First, GNY is not a party in the Underlying Action, and Scottsdale has not argued that GNY is in privity with Park City for the purposes of claim preclusion.  Second, GNY's claim in this federal action and Park City's claims in the Underlying Action are not the same.  The State Court Decision addressed Park City's claims against the contractor for contractual indemnification and breach of contract for failure to procure insurance.  Here, GNY is seeking a declaration that under the Scottsdale Policy, Scottsdale has and had a duty to defend Park City.  These are distinct claims, and this Court is not obligated to ignore the Contract.  Finally, no final judgment has been entered in the Underlying Action.

There is also no reason to abstain from deciding this duty to defend claim.  This decision will serve a useful purpose.  It resolves the uncertainty regarding the defense of Park City in the Underlying Action.  Contrary to Scottsdale's suggestion, this Court's decision will not encroach upon the state court's domain.  Nothing in this decision need alter the state court's ruling on Park City's contractual indemnification and breach of contract cross-claims.

Scottsdale also argues that the six-year statute of limitations on GNY's action for a declaration of breach of contract has expired because the statute of limitations began to

run when Scottsdale denied GNY's tender letter on April 3, 2014. This is incorrect.  "A cause of action based on an insurer's alleged breach of a contractual duty to defend accrues only when the underlying litigation brought against the insured has been finally terminated and the insurer can no longer defend the insured even if it chooses to do so."  Ghaly v. First Am. Title Ins. Co. of N.Y., 644 N.Y.S.2d 770, 770 (2d Dep't 1996).  Here, the Underlying Action has not yet concluded.  Therefore, the relevant statute of limitations has not expired.

Lastly, Scottsdale argues that if it has a duty to defend Park City, that duty was not triggered until April 13, 2022, the date Scottsdale claims it became aware of the Contract through Park City's motion to renew in the Underlying Action.  This too is incorrect.  As a preliminary matter, Scottsdale provides no admissible evidence to support its assertion that it first became aware of the Contract on April 13, 2022.  In any event, Scottsdale had "actual knowledge of facts establishing a reasonable possibility of coverage" when it received the tender letter from GNY on November 26, 2013.  Fitzpatrick, 78 N.Y.2d at 67.  Its duty to defend was therefore triggered on that date.

## Conclusion

GNY's February 2, 2023 motion for partial summary judgment is granted.  Burlington's February 22, 2023 cross-motion for summary judgment is also granted.  Scottsdale's February 22,

2023 cross-motion for summary judgment seeking a declaration that Scottsdale and Burlington have equal obligations to defend Park City is granted; Scottsdale's cross-motion is otherwise denied.

Dated:     New York, New York
           May 18, 2023

                                    _____
                                    DENISE COTE
                              United States District Judge